**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANGELO BURGOS, | : | |
| | : | Civil Action No. 08-5892 (JLL) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MICHELLE RICCI, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

Petitioner pro se
Angelo Burgos
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Counsel for Respondents
Catherine Antoine Foddai
Bergen Co. Pros. Office
10 Main Street
Hackensack, NJ 07601

**LINARES**, District Judge

Petitioner Angelo Burgos, a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Warden Michelle Ricci and the Attorney General of New Jersey.

Petitioner has also asked this Court to stay these proceedings so that he may exhaust in state court certain unexhausted claims. For the reasons stated herein, the request for stay will be denied.

I. BACKGROUND

A. Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> The State presented compelling evidence that in the early morning hours of April 29, 1997, defendant shot and killed Robert Price during a robbery in a pool room in Lodi. Price, a pool room patron, resisted the perpetrator's effort to remove gold chains from his neck. A scuffle ensued during which the perpetrator drew a firearm. As Price attempted to gain control of the gun, a shot was fired. When the gun jammed, the perpetrator slammed it on the table, re-cocked it and shot Price numerous times. After Price fell to the ground, the perpetrator shot him in the head and then fled the pool hall.
>
> Although the perpetrator was hooded, the patrons were able to give a general description of him. That information was relayed by the Lodi Police to all nearby law enforcement agencies. After Sergeant Walsh of the Little Ferry Police Department received the transmission, he observed a light-skinned black male in a Dodge Stratus. He followed the vehicle, but after determining that the vehicle had not been stolen, he suspended his pursuit.
>
> However, shortly thereafter, Officer John Harper of the Fort Lee Police Department observed a vehicle with a black male generally fitting the description given by the Lodi Police. When he activated his overhead lights, the vehicle came to a stop. However, it suddenly took off and

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

> proceeded through a toll booth at the George Washington Bridge toward New York City. Officer Harper pursued the vehicle, but lost sight of it in the vicinity of 178th Street and Amsterdam Avenue. Prior to the pursuit, Officer Harper "ran" the license plate of the vehicle, number PD505L, and determined that it was the same vehicle previously observed by Sergeant Walsh.
>
> Sometime that same morning, defendant's sister and brother-in-law received a telephone call from defendant. Defendant requested that his sister report to the police that her vehicle had been stolen. The sister in fact had loaned the vehicle to defendant a few days earlier. She complied and reported the vehicle stolen. Further, defendant called his girlfriend in Syracuse, New York, advising her of his intention to visit her. During a three-way call with defendant, his girlfriend and mother, defendant asked his mother whether anyone had come looking for him. Later in the day, defendant again called his girlfriend and asked her to obtain a bus ticket for him for a return trip from Syracuse to New York City.
>
> At approximately 6 a.m. the same morning, the New York Police issued a parking ticket to a car with a New Jersey license plate number PD505L parked on the corner of Broadway and 162nd Street. When defendant returned from Syracuse to Passaic County, he was arrested for the murder of Price and the robberies.
>
> Over defendant's objection, Assistant Prosecutor David Pine was permitted to testify that defendant had been indicted in 1995 for committing armed robbery and weapons possession offenses. Robert Price, the murder victim, was also the victim of that armed robbery. The indictment alleged that $35,000 had been stolen from Price. The trial court permitted the testimony as "other crimes evidence" under N.J.R.E. 404(b), relevant to defendant's motive to kill Price.

(Op. of Sup. Ct. of N.J., App. Div., at 3-5 (Feb. 21, 2002).)

B.  Procedural History

Petitioner was convicted of: purposeful or knowing murder, N.J.S.A. 2C:11-3a(1) and -3a(2); felony murder, N.J.S.A. 2C:11-3a(3); six counts of armed robbery, N.J.S.A. 2C:15-1; possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a; and possession of a handgun without a permit, N.J.S.A. 2C:39-5b. On December 17, 1999, the trial court imposed a sentence of life imprisonment, with a 30-year parole dis-qualifier, on the murder conviction, six twenty-year terms on the armed robbery convictions concurrent to each other and consecutive to the life term, and a five year concurrent term on the conviction for gun possession without a permit. On February 21, 2002, the Superior Court of New Jersey, Appellate Division, affirmed. On May 22, 2002, the Supreme Court of New Jersey denied certification. State v. Burgos, 798 A.2d 1272 (N.J. 2002) (table). Petitioner did not petition the United States Supreme Court for a writ of certiorari.

While the direct appeal of his conviction was proceeding, Petitioner was tried and acquitted of the earlier 1995 robbery of Robert Price. On April 13, 2003, Petitioner submitted his first state petition for post-conviction relief ("PCR"). (Resp. Ex. 7, at Da159.) In that PCR petition, Petitioner argued that the trial court should have barred Assistant Prosecutor David Pine's testimony regarding the then-pending 1995 robbery indictment,

4

particularly in light of Petitioner's subsequent acquittal. (Id., at Da177.) On March 22, 2005, the trial court denied relief. On June, 20, 2008, the Appellate Division affirmed the denial of relief. On October 22, 2008, the Supreme Court of New Jersey denied certification. State v. Burgos, 960 A.2d 394 (N.J. 2008) (table). This Petition, dated November 20, 2008, followed.

Here, among his other claims for relief, Petitioner asserts that he should be granted a new trial based on newly discovered evidence, specifically, exculpatory testimony, by several eyewitnesses who testified in the trial on the 1995 robbery charge, that Petitioner was not the individual who robbed Robert Price in 1995. Petitioner has requested a stay of these proceedings in order to exhaust this claim in state court. In the supporting memorandum, Petitioner also asserts his desire to exhaust other claims, asserted here, of ineffective assistance of post-conviction relief counsel and ineffective assistance of trial counsel.

On March 31, 2009, Petitioner submitted to this Court a copy of his second state petition for post-conviction relief, also dated March 31, 2009, in which he sought a new trial based upon the allegedly exculpatory testimony of the eyewitnesses who testified with regard to the 1995 robbery charges, as well as the testimony of several police officers who stated that they found no forensic evidence tying Petitioner to that crime. Petitioner

5

has advised the Court that the trial court denied relief, and that this matter is now pending before the Appellate Division.

Respondents have not specifically addressed the request for a stay. Instead they have responded to the Petition on the merits.

## II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from

6

reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

. . .

28 U.S.C. § 2254.

The limitation period for a § 2254 habeas petition is set forth in 28 U.S.C. § 2244(d),[2] which provides in pertinent part:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[2] The limitations period is applied on a claim-by-claim basis. See Fielder v. Varner, 379 F.3d 113, 118 (3d Cir. 2004).

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

As noted above, a state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or . . . circumstances exist that render such process ineffective . . . ." 28 U.S.C. § 2254(b)(1); see also Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner exhausts state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings. See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) (announcing a rule "requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); Lambert, 134 F.3d at 513 (stating that a collateral attack in state court is not required if the petitioner's claim has been considered on direct appeal); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available

8

procedure, the question presented."). Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied. Castille v. Peoples, 489 U.S. 346, 350 (1989).

For a claim to be exhausted, the claim heard by the state courts must be the "substantial equivalent" of the claim asserted in the federal habeas petition. Picard v. Connor, 404 U.S. 270, 278 (1971). Reliance on the same constitutional provision is not sufficient; the legal theory and factual basis must also be the same. Id. The petitioner generally bears the burden to prove all facts establishing exhaustion. Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).

Generally, even if it is not likely that a state court will consider the claims on the merits, district courts should dismiss petitions containing unexhausted claims in the absence of a state court decision clearly precluding further relief. See Toulson, 987 F.2d at 989 ("Because no [New Jersey] court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not clearly require a finding of default, we hold that the district court should have dismissed the petition without prejudice for failure to exhaust state remedies"). But see Christy v. Horn, 115 F.3d 201, 206-07 (3d Cir. 1997) ("[I]n rare cases exceptional circumstances of peculiar urgency may exist which permit a federal court to

9

entertain an unexhausted claim."). More recently, because the one-year statute of limitations enacted by AEDPA in 1996 is not statutorily tolled by the premature filing of a federal habeas petition, see Duncan v. Walker, 533 U.S. 167, 172 (2001), federal courts sometimes may stay § 2254 habeas proceedings to permit prisoners to exhaust state claims, see Crews v. Horn, 360 F.3d 146, 151 (3d Cir. 2004). Petitioner has requested such a stay.

### III. ANALYSIS

Petitioner has asked this Court for a stay of these proceedings so that he can exhaust, in state court, his claim that he is entitled to a new trial based on newly discovered evidence, specifically, the allegedly exculpatory testimony of several eyewitnesses to the 1995 robbery. In addition, Petitioner seeks to exhaust certain claims of ineffective assistance of state trial and PCR counsel.

As noted above, the exhaustion requirement is a "total exhaustion" rule; that is, all claims presented in the federal habeas petition must have been exhausted in state court. Rose v. Lundy, 455 U.S. 509, 522 (1982). At the time Lundy was decided, there was no statute of limitations on the filing of federal habeas petitions. The enactment in 1996 of a one-year limitations period for § 2254 habeas petitions, however, "has altered the context in which the choice of mechanisms for handling mixed petitions is to be made." Crews, 360 F.3d at 151

10

(quoting Zarvela v. Artuz, 254 F.3d 374, 379 (2d Cir. 2001)). Because of the one-year limitations period, dismissal of a timely-filed mixed petition may forever bar a petitioner from returning to federal court. Thus, "[s]taying a habeas petition pending exhaustion of state remedies is a permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition." Id. Indeed, in Crews, the Third Circuit held that, "when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action." Id., at 154.

But, the Supreme Court has somewhat limited the stay-and-abeyance rule announced in Crews. In Rhines v. Weber, the Supreme Court stated:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.
>
> . . .
>
> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In

11

> such circumstances, the district court should stay, rather than dismiss, the mixed petition. . . . For the same reason, if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief.

544 U.S. 269, 277-78 (2005) (citations omitted).

Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in the one-year statute of limitations. "Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back." Id. at 278; see also Crews, 360 F.3d at 154.

Here, Petitioner has failed to demonstrate good cause for failure to exhaust the claims for which he seeks a stay. Petitioner was acquitted of the 1995 robbery charges while his direct appeal of this murder conviction was pending. Certainly, at the time he filed his first state PCR petition, he knew of the allegedly exculpatory testimony and could have asserted a claim based on that testimony at that time. Not only did he fail to assert that claim in his first PCR petition in 2003, he apparently did not assert that claim in a second state PCR petition until some time in 2008, after which it was denied as time-barred. (Pet.'s Ltr., Attachment, CM/ECF No. 1.) Petitioner then asserted the claim in a motion for a new trial in

12

March of 2009. Petitioner has provided this Court with no justification for his dilatoriness in presenting this claim to the state courts.

Similarly, the claims of ineffective assistance of trial counsel were known to Petitioner at the time he filed his first state PCR petition. Some were raised in the first state PCR petition. The claim regarding failure to advise Petitioner of his potential sentencing exposure, however, was raised for the first time on appeal of the denial of PCR relief, and the Appellate Division refused to consider the claim because it was procedurally defaulted and untimely. (Op. of App. Div., at 8-9 (June 20, 2008).) Petitioner abandoned, before the Supreme Court of New Jersey, all claims of ineffective assistance of trial counsel, and has failed to provide this Court with any justification for that action. (Resp. Ex. 11, Pet.'s Br. to the S. Ct. Of N.J.) Moreover, it does not appear, to date, that Petitioner has made any effort to exhaust those claims.

Finally, the claim of ineffective assistance of state post-conviction relief counsel is not "potentially meritorious." Federal law prohibits the grant of federal habeas relief on grounds of "ineffectiveness or incompetence" of counsel in state post-conviction proceedings. 28 U.S.C. § 2254(i). Thus, it would not be appropriate to stay this proceeding for Petitioner to exhaust that claim in state court.

Therefore, this Court denies Petitioner's request for a stay, but, in accordance with Rhines, the Court grants Petitioner leave to advise this Court whether he wishes to delete the unexhausted claims and proceed with the exhausted claims, rather than face dismissal of the entire mixed petition. This Court takes no position as to whether any subsequently filed petition might be time-barred.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's request for a stay of this proceeding will be denied. An appropriate Order accompanies this Opinion.

_____
Jose L. Linares
United States District Judge

Dated: July 19, 2010