<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

ANGELO BURGOS,            :
                                 :     Civil Action No. 08-5892 (JLL)
            Petitioner,    :
                                 :
            v.              :     **OPINION**
                                 :
MICHELLE RICCI, et al.,      :
                                 :
            Respondents.    :

**APPEARANCES:**

Petitioner <u>pro</u> <u>se</u>           Counsel for Respondents
Angelo Burgos              Catherine Antoine Foddai
New Jersey State Prison      Bergen Co. Pros. Office
P.O. Box 861                10 Main Street
Trenton, NJ  08625         Hackensack, NJ 07601

**LINARES**, District Judge

     Petitioner Angelo Burgos, a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Warden Michelle Ricci and the Attorney General of New Jersey.

     For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> The State presented compelling evidence that in the early morning hours of April 29, 1997, defendant shot and killed Robert Price during a robbery in a pool room in Lodi.  Price, a pool room patron, resisted the perpetrator's effort to remove gold chains from his neck.  A scuffle ensued during which the perpetrator drew a firearm.  As Price attempted to gain control of the gun, a shot was fired.  When the gun jammed, the perpetrator slammed it on the table, re-cocked it and shot Price numerous times.  After Price fell to the ground, the perpetrator shot him in the head and then fled the pool hall.

> Although the perpetrator was hooded, the patrons were able to give a general description of him.  That information was relayed by the Lodi Police to all nearby law enforcement agencies.  After Sergeant Walsh of the Little Ferry Police Department received the transmission, he observed a light-skinned black male in a Dodge Stratus.  He followed the vehicle, but after determining that the vehicle had not been stolen, he suspended his pursuit.

> However, shortly thereafter, Officer John Harper of the Fort Lee Police Department observed a vehicle with a black male generally fitting the description given by the Lodi Police.  When he activated his overhead lights, the vehicle came to a stop.  However, it suddenly took off and proceeded through a toll booth at the George Washington Bridge toward New York City. Officer Harper pursued the vehicle, but lost sight of

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

it in the vicinity of 178th Street and Amsterdam
Avenue.  Prior to the pursuit, Officer Harper "ran" the
license plate of the vehicle, number PD505L, and
determined that it was the same vehicle previously
observed by Sergeant Walsh.

Sometime that same morning, defendant's sister and
brother-in-law received a telephone call from
defendant.  Defendant requested that his sister report
to the police that her vehicle had been stolen.  The
sister in fact had loaned the vehicle to defendant a
few days earlier.  She complied and reported the
vehicle stolen.  Further, defendant called his
girlfriend in Syracuse, New York, advising her of his
intention to visit her.  During a three-way call with
defendant, his girlfriend and mother, defendant asked
his mother whether anyone had come looking for him.
Later in the day, defendant again called his girlfriend
and asked her to obtain a bus ticket for him for a
return trip from Syracuse to New York City.

At approximately 6 a.m. the same morning, the New
York Police issued a parking ticket to a car with a New
Jersey license plate number PD505L parked on the corner
of Broadway and 162nd Street.  When defendant returned
from Syracuse to Passaic County, he was arrested for
the murder of Price and the robberies.

Over defendant's objection, Assistant Prosecutor
David Pine was permitted to testify that defendant had
been indicted in 1995 for committing armed robbery and
weapons possession offenses.  Robert Price, the murder
victim, was also the victim of that armed robbery.  The
indictment alleged that $35,000 had been stolen from
Price.  The trial court permitted the testimony as
"other crimes evidence" under N.J.R.E. 404(b), relevant
to defendant's motive to kill Price.

(Opinion of Superior Court of New Jersey, Appellate Division, at

3-5 (Feb. 21, 2002).)

B.    <u>Procedural History</u>

Petitioner was convicted of purposeful or knowing murder,

N.J.S.A. 2C:11-3a(1) and -3a(2), felony murder, N.J.S.A. 2C:11-

3a(3), six counts of armed robber4y, N.J.S.A. 2C:15-1, possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a, and possession of a handgun without a permit, N.J.S.A. 2C:39-5b.  On December 17, 1999, the trial court imposed a sentence of life imprisonment, with a 30-year parole disqualifier, on the murder conviction, six twenty-year terms on the armed robbery convictions concurrent to each other and consecutive to the life term, and a five year concurrent term on the conviction for gun possession without a permit.  On February 21, 2002, the Superior Court of New Jersey, Appellate Division, affirmed.  On May 22, 2002, the Supreme Court of New Jersey denied certification. State v. Burgos, 172 N.J. 359 (2002).  Petitioner did not petition the United States Supreme Court for a writ of certiorari.

While the direct appeal of his conviction was proceeding, Petitioner was tried and acquitted of the earlier 1995 robbery of Robert Price with respect to which the prosecutor had been permitted to testify.

On April 13, 2003, Petitioner submitted his first state petition for post-conviction relief.  (Resp. Ex. 7 at Da159.)  In that PCR petition, Petitioner argued that the trial court should have barred Assistant Prosecutor David Pine's testimony regarding the then-pending 1995 robbery indictment, particularly in light of Petitioner's subsequent acquittal.  (Resp. Ex. 7 at Da177.)

4

On March 22, 2005, the trial court denied relief.  On June, 20, 2008, the Appellate Division affirmed the denial of relief.  On October 22, 2008, the Supreme Court of New Jersey denied certification.  <u>State v. Burgos</u>, 196 N.J. 598 (2008).  This Petition, dated November 20, 2008, followed.

Following briefing, this Court entered its Opinion and Order [15, 16] denying Petitioner's request for a stay of this action in order to exhaust certain claims in state court.  More specifically, the claims that were not exhausted included that claim that Petitioner is entitled to a new trial based on newly discovered evidence, specifically, the allegedly exculpatory testimony of several eyewitnesses to the 1995 robbery, provided during the 2001 trial relating to the 1995 robbery, as well as certain claims of ineffective assistance of state trial and PCR counsel.  Thereafter, Petitioner advised the Court that he would withdraw those claims, asserted here, that have not been exhausted in state court.[2]

Accordingly, the remaining claims consist of: (1) denial of the right to a fair trial, based upon admission of evidence of an earlier armed robbery accusation, of which Petitioner was later acquitted, (2) denial of the right to an impartial jury, based

---

[2] During the pendency of this action, Petitioner exhausted the claim that he is entitled to a new trial based on newly discovered evidence.  He has now filed a Motion [18] in this Court to amend this Petition to re-assert that claim.  As is discussed more fully, below, that Motion will be denied.

upon the Court's advising the jury about the appellate process, (3) denial of the right to an impartial jury, based upon the trial court's failure to dismiss a juror who knew one of the State's witnesses, (4) denial of the right to a fair trial, based upon the admission into evidence of a photograph of Petitioner in the nude, (5) denial of the right to effective assistance of trial counsel.

Briefing of this matter is complete and this matter is now ready for decision.

## II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas

7

court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state

court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v.
Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v.
Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent
standards than more formal pleadings drafted by lawyers.  Estelle
v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S.
519, 520 (1972).  A pro se habeas petition and any supporting
submissions must be construed liberally and with a measure of
tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998);
Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989);
United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969),
cert. denied, 399 U.S. 912 (1970).

### III.  ANALYSIS

A.  Evidence Issues

Petitioner alleges that his Sixth Amendment right to a fair
trial was violated when (1) evidence of a pending robbery
indictment was admitted and (2) a photograph of Petitioner nude
from the waist up was admitted.

The Appellate Division rejected the first of these claims on
direct appeal.

> Over defendant's objection, Assistant Prosecutor
> David Pine was permitted to testify that defendant had
> been indicted in 1995 for committing armed robbery and
> weapons possession offenses.  Robert Price, the murder
> victim, was also the victim of that armed robbery.  The
> indictment alleged that $35,000 had been stolen from
> Price.  The trial court permitted the testimony as

"other crimes evidence" under N.J.R.E. 404(b), relevant to defendant's motive to kill Price.

The central point raised by defendant in Points I and II of his Public Defender's brief is that the trial court erred in admitting into evidence the 1995 indictment. Defendant argues that this other-crimes evidence should have been excluded under N.J.R.E. 404(b) because the State failed to prove by clear and convincing evidence that defendant actually committed the robbery. See State v. Fortin, 162 N.J. 517, 529 (2000); State v. Cofield, 127 N.J. 328, 338 (1992). Defendant asserts that in this case, "all that was shown was that the defendant had been indicted, which in and of itself is neither a prior crime nor a bad act, but merely a judicial procedure." In fact, the Assistant Prosecutor testified that he had interviewed Price in preparation of trial in the matter and Price had told him he could identify defendant as the assailant because "[h]e knew him."

More to point is that the State was not attempting to prove that defendant in fact had committed the prior crimes; it was the pendency of the indictment and not the prior acts themselves, that were relevant to defendant's motive to kill Price. The State's theory was that the prosecution of defendant in the armed robbery case could not go forward if Price were not available to identify defendant. Further, Assistant Prosecutor Pine testified as to the potential penal consequence defendant faced in the prior indictment if convicted of all counts. This testimony provided substantial support for the State's contention that defendant had a motive to murder Price.

Moreover, in his limiting instruction, the trial court was careful to advise the jury that it was "not here to determine" guilt or innocence in the robbery case and that defendant was presumed innocent of the offense. The court stressed that the indictment was being admitted solely for the purpose of establishing that defendant had a motive to murder Price. The court carefully applied the four-part test pronounced by the Supreme Court in Cofield, supra, 127 N.J. at 338.

Citing State v. Marrero, 148 N.J. 469 (1997), defendant also claims that the other-crimes instruction to the jury was erroneous because the trial court did

10

not explain that the jury was not to consider the
robbery indictment before it first found defendant
guilty beyond a reasonable doubt of the present
charges.  For that proposition, defendant quotes the
following passage from Marrero:

> The evidence could not be used before the
> jury found defendant guilty of the
> homicide beyond a reasonable doubt based on evidence
> independent of the other-crime evidence even
> though the evidence was admitted to show
> motive and intent.

> [Id. at 496.]

Unlike defendant, we do not read Marrero as
holding that, in every case where other-crimes evidence
is admitted, the trial court must instruct the jury
that it is not to consider such evidence until it is
satisfied by other independent evidence that defendant
is guilty of the crime charged beyond a reasonable
doubt.  Such a rule would render other-crimes evidence
superfluous since, as in this case, if the State
established that it was defendant who committed the
crime by independent evidence, the other-crimes
evidence establishing motive would not be needed.

In fact, that portion of the Marrero opinion
quoted by defendant is not a holding by the Court: it
is nothing more than the Court's recital of what the
trial court in Marrero had stated in its jury
instruction.  In Marrero, defendant was charged with
purposeful and knowing murder and aggravated sexual
assault, among other crimes.  Id. at 474-75.  He was
awaiting sentence for a prior sexual assault upon a
different victim when the crimes he was charged with
under the present indictment were committed.  Id. at
477.  After the trial court excluded this other-crimes
evidence, our court, by leave granted, reversed and
instructed the trial court to permit the State to
introduce the evidence with direction that the court
give:

> an appropriate limiting instruction which
> shall include the direction that this
> evidence is not to be considered unless and
> until the jury finds independently from other
> evidence in the case, beyond a reasonable

11

doubt, that defendant was in fact the
perpetrator of the homicide.  Once having so
found, the jury may consider <u>the evidence on
the issue of defendant's motive and intent in
committing the homicide in order to determine
the type and degree of homicide involved</u>.

[<u>Id.</u> at 477 (emphasis added).]

Obedient to our order, the trial court gave this
instruction.

Apparently this instruction was given because of
the unique facts of that case.  Significantly, the
State sought to introduce the prior sexual assault as
relevant to motive because the State's theory was that
defendant had killed the victim "after sexually
assaulting her in order to avoid an enhanced prison
term on his pending sentencing for sexual assault and
to avoid further prosecution for yet another sexual
assault."  <u>Id.</u> at 485.  In other words, according to
the State, the other-crime evidence "assisted the jury
in determining motive and intent in order to determine
the degree of the homicide."  <u>Ibid.</u>

In this case, the evidence was not admitted for
the purposes of establishing defendant's state of mind
or for the jury "to determine the degree of the
homicide."  On the evidence here, there is little doubt
that the murder was purposeful or knowing and committed
in the course of a robbery.  Indeed, the jury so found.
The sole question was identity.  The State proffered
the other-crimes evidence, the pending indictment, to
establish motive, which was essential circumstantial
evidence relevant to the identity issue.  On the facts
in this case, the instruction given by the trial court
was in accordance with the teachings of our Supreme
Court.  <u>See</u> <u>id.</u> at 495; <u>Cofield</u>, <u>supra</u>, 127 N.J. at
340-41; <u>State v. Stevens</u>, 115 N.J. 289, 304-09 (1989).

(Opinion of Appellate Division, at 5-9 (Feb. 21, 2002).)

The Appellate Division rejected the second of Petitioner's

evidence claims as too lacking in merit to deserve discussion.

Certain witnesses testified that the murderer in this case wore a ski mask during the offense, precluding their testimony regarding his facial features, but they testified that he was muscular with a large chest.  The prosecutor accordingly sought to admit the photograph as evidence of Petitioner's muscular physique.  Petitioner objected to admission of the photograph, as unduly prejudicial, arguing that the photograph pointed out Petitioner's muscles.  The trial court found the photograph probative and not prejudicial.

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))).  Accordingly, Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process.  Estelle, 502 U.S. at 70 ("'the Due Process Clause guarantees fundamental elements of fairness in a criminal trial'") (quoting Spencer v. Texas, 385 U.S. 554, 563-64 (1967)).

For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a

fundamentally fair trial.  <u>Keller v. Larkins</u>, 251 F.3d 408, 413
(3d Cir.), <u>cert. denied</u>, 534 U.S. 973 (2001).

Here, the state courts have determined that there was no
evidentiary error under state law.  Nor did the evidentiary
decisions challenged here deprive Petitioner of a fundamentally
fair trial.  The evidence of the robbery indictment was probative
of Petitioner's motive for committing the murder, and the
photographic evidence was probative of Petitioner's identity, in
connection with eyewitness testimony regarding the physique of
the perpetrator.  The decisions of the state courts are neither
contrary to nor an unreasonable application of Supreme Court law.
Petitioner is not entitled to relief on these claims.

B.    <u>Jury Issues</u>

Plaintiff alleges that his Sixth Amendment right to an
impartial jury was violated when (1) the trial court failed to
dismiss a juror who knew one of the state's witnesses, and
(2) the trial judge informed the jury about the appellate
process.

The first claim is based upon one juror's notification to
the judge that he knew one of the witnesses, a former student who
had also played on a high school sports team of which the juror
was an assistant coach.  Prior to the witness's testimony, the
trial judge called the juror into chambers, in the presence of
both counsel, and asked him about the nature of his relationship

14

with the witness and whether the juror could remain impartial. Satisfied with the juror's answers, and with no objection from either counsel, the trial judge determined that the juror could continue to serve.

The second claim is based upon a comment by the trial judge, in his initial instructions to the jury at the commencement of trial.

> Now, I usually do not say overruled, sometimes I do. I will say I'll allow it. I'll allow the question. It may not conform technically, but I am the Judge that this is not that -- maybe not right on point and I'll make a judgment call on it.
>
> And that, whatever, I do and whatever we all do is reviewed by an Appellate Court too, so it's all going on.
>
> What I want you to do is clearly understand that, don't be distracted by all that. Say I wonder why he objected to that or why he's not, he's, he's sustaining or he's allowing certain questions and the attorney keeps objecting and all. Don't get distracted by all that. That's sort of our business, we can take care of that.

[Transcript 5 at 37-38 (Oct. 12, 1999.]³ Petitioner did not object to the instruction at the time. He now contends that this instruction diluted the jury's sense of responsibility.

On direct appeal, the Appellate Division rejected both of these claims as too lacking in merit to warrant discussion.

---

³ In addition, the Court advised the juror previously discussed to speak up so that his words could be tape recorded for any appeal.

The Sixth Amendment, applicable to the states through the Fourteenth Amendment, <u>Duncan v. Louisiana</u>, 391 U.S. 145 (1968), guarantees criminal defendants an impartial jury.

> This is not mere exhortation for it has been noted that "the right to an impartial jury carries with it the concomitant right to take reasonable steps designed to insure that the jury is impartial."  Among the most important of the means designed to insure an impartial jury is the right to strike those jurors who manifest an inability to try the case solely on the basis of the evidence.  This right to exclude incompetent jurors cannot be exercised meaningfully or effectively unless counsel has sufficient information with which to evaluate members of the venire.

<u>Turner v. Murray</u>, 476 U.S. 28, 40 (1986) (citations omitted). Voir dire "is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion." <u>Connors v. United States</u>, 158 U.S. 408, 413 (1895).  "This is so because the 'determination of impartiality, in which demeanor plays such an important part, is particularly within the province of the trial judge.'" <u>Ristaino v. Ross</u>, 424 U.S. 589, 594-95 (1976) (quoting <u>Rideau v. Louisiana</u>, 373 U.S. 723, 733 (1963) (Clark, J., dissenting)).

In addition, a criminal defendant has a Fourteenth Amendment due process right to "a tribunal both impartial and mentally competent to afford a hearing." <u>Jordan v. Massachusetts</u>, 225 U.S. 167, 176 (1912); <u>see also</u> <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961).

16

Here, upon being notified of a potential bias, the trial judge properly questioned the juror about his prior relationship with the witness, in the presence of both counsel, and there is nothing to suggest, either in that line of questioning or in Petitioner's subsequent briefing of the issue, that the trial court erred in determining that the juror could be impartial. Petitioner is not entitled to relief on this claim.

With respect to Petitioner's claim that the trial court deprived him of his right to an impartial jury, or a fair trial, by commenting on the appellate process, Petitioner has pointed to no controlling Supreme Court precedent on point.  Although Petitioner frames this issue of one of jury impartiality, in the state courts he framed the issue as one of trial fairness under the Due Process Clause of the Fourteenth Amendment.  Under either analysis, he has failed to establish a right to habeas relief.

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the

17

Constitution.  And we also bear in mind our previous
admonition that we "have defined the category of
infractions that violate 'fundamental fairness' very
narrowly."  "Beyond the specific guarantees enumerated
in the Bill of Rights, the Due Process Clause has
limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations

omitted).  Thus, the Due Process Clause is violated only where

"the erroneous instructions have operated to lift the burden of

proof on an essential element of an offense as defined by state

law."  Smith v. Horn, 120 F.3d 400, 416 (1997).  See also In re

Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause

protects the accused against conviction except upon proof beyond

a reasonable doubt of every fact necessary to constitute the

crime with which he is charged"); Sandstrom v. Montana, 442 U.S.

510, 523 (1979) (jury instructions that suggest a jury may

convict without proving each element of a crime beyond a

reasonable doubt violate the constitutional rights of the

accused).

     Where such a constitutional error has occurred, it generally

is subject to "harmless error" analysis.  Smith v. Horn, 120 F.3d

at 416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999).

"[I]f the [federal habeas] court concludes from the record that

the error had a 'substantial and injurious effect or influence'

on the verdict, or if it is in 'grave doubt' whether that is so,

the error cannot be deemed harmless."  Id. at 418 (citing

18

<u>California v. Roy</u>, 519 U.S. 2, 5 (1996)).  In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.  If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

<u>Middleton v. McNeil</u>, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

However, a jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden [of proof beyond a reasonable doubt] is plainly inconsistent with the constitutionally rooted presumption of innocence." <u>Cool v. United States</u>, 409 U.S. 100, 104 (1972).  "[T]rial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires." <u>Victor v. Nebraska</u>, 511 U.S. 1, 22 (1994); <u>see also</u> <u>Cage v. Louisiana</u>, 498 U.S. 39, 41 (1990).  As the Supreme Court explained in <u>Victor</u>,

> so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.  Rather, taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.

<u>Victor</u>, 511 U.S. at 6 (citations and internal quotation marks omitted).

"[A] misdescription of the burden of proof ... vitiates <u>all</u> the jury's findings. <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 281 (1993) (emphasis in original). Such an error is considered structural and thus is not subject to harmless error review. <u>See id.</u> at 280-82. <u>But see</u> <u>Neder v. United States</u>, 527 U.S. 1, 8-11 (1999) (applying harmless-error analysis where jury was not instructed on an element of an offense).

Petitioner argues here that the reference to the appellate process diluted the jury's sense of responsibility for its verdict, depriving him of a fair trial. Only in the context of a capital crime has the Supreme Court determined, under the Eighth Amendment, that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 328-29 (1985). Other courts that have considered the issue in non-capital cases, while finding such references inappropriate, have held that they do not constitute error so long as they are accurate. <u>See</u>, <u>e.g.</u>, <u>U.S. v. Arcadipane</u>, 41 F.3d 1, 8-9 (1st Cir. 1994). Challenges to such instructions are to be treated like any other challenge to jury instructions; that is, a reviewing court must evaluate the charge as a whole to determine whether it deprived the defendant

20

of a fair trial.  Id.; United States v. Pine, 609 F.2d 106 (3d Cir. 1979).

Here, the reference to the appellate process was made solely in connection with an explanation of the trial court's treatment of objections, and it created the impression only that the judge's actions were subject to appellate review.  Moreover, in both the initial instructions and the final instructions to the jury, the trial court emphasized the jurors' responsibility to pay attention to the evidence, to determine the case solely upon the basis of the evidence presented, and to convict only if the government proved its case beyond a reasonable doubt.  See generally Tr. 5 (Oct. 12, 1999) and Tr. 11 (Oct. 20, 1999).

The state courts' determination that these claims were meritless is neither contrary to nor an unreasonable application of controlling Supreme Court precedent.  Petitioner is not entitled to relief on these claims.

C.   Ineffective Assistance of Counsel

Plaintiff alleges that his trial counsel was ineffective because (1) trial counsel should have raised the issue of inconsistency between the trial judge's pre-trial order and subsequent written order regarding admissibility of the prior robbery indictment, and (2) trial counsel failed to object to the

introduction of plea negotiations with respect to the 1995 armed robbery case.[4]

The Appellate Division rejected these claims on appeal from the denial of post-conviction relief.

> He further argues that trial counsel was ineffective in failing to challenge the disparity between the ruling and the order and the judge's reasoning on the issue. ...
>
> As to defendant's other arguments, the fact that he was acquitted in 2002 of robbing Price in 1995 is irrelevant to the issue of whether the pending indictment for that robbery was the motive for Price's murder in 1997. It was defendant's state of mind at the time of the murder that was at issue, not his actual guilt or innocence in regard to the 1995 robbery.[fn1] Furthermore, we have already addressed the admissibility of the indictment on defendant's direct appeal. Burgos, supra, slip op. at 5-6. Even in the face of an acquittal, the indictment would remain admissible to prove motive for the 1997 murder.
>
> > [fn1]   We note that the absence of the victim's in-court identification as a result of the 1997 murder may well have contributed significantly to the 2002 non-guilty verdict on the 1995 robbery indictment.
>
> As to the divergence between the pretrial ruling and the subsequent order, we conclude that defendant has not proven that his counsel was ineffective. In Strickland v. Washington, 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed. 2d 674, 692 (1984), the U.S. Supreme Court explained the constitutional guarantee of effective assistance of counsel for every criminal defendant embodied in the Sixth Amendment. A two-prong analysis is required when evaluating a claim of ineffective assistance of counsel. Id. at 687, 104

---

[4] Petitioner has also asserted that his post-conviction relief counsel failed to provide effective assistance. Such a claim is not a ground for federal habeas relief. See 28 U.S.C. § 2254(i).

S.Ct. at 2064, 80 L.Ed.2d at 693.  To prevail, the defendant must first demonstrate that trial counsel committed serious professional errors.  Ibid.  Second, defendant must demonstrate that the professional errors prejudiced the defendant to the extent that he was deprived of a fair trial.  Ibid.  Our Supreme Court has adopted the standards embodied in Strickland.  State v. Fritz, 205 N.J. 42, 57-58 (1987).

"'Judicial scrutiny of counsel's performance must be highly deferential,' and must avoid viewing the performance under the 'distorting effects of hindsight.'"  State v. Norman, 151 N.J. 5, 37 (1997) (quoting Strickland, supra, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed. 2d at 694).  Moreover, there is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, supra, 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.  Adequate assistance of counsel should be measured by a "reasonable competence" standard.  Fritz, supra, 105 N.J. at 60-61.  That standard does not require "the best of attorneys," but rather that attorneys not be "so ineffective as to make the idea of a fair trial meaningless."  State v. Davis, 116 N.J. 341, 351 (1989).

Here, it is clear from the transcript of the pretrial hearing that the ruling addressed only the general admissibility of the 1995 robbery indictment and not the particulars of every facet of the indictment.  Trial counsel cross-examined the State's witness on the indictment and secured testimony beneficial to defendant [including testimony that Passaic County prosecutors had offered Petitioner a five-year sentence on the robbery, which he turned down, and that Petitioner was never specifically informed that Price would testify against him at the robbery trial].  Additionally, we concluded on direct appeal that the particulars of the indictment were properly placed into evidence.  State v. Burgos, supra, slip op. at 6.  We are satisfied that defendant has not met his burden of proof under either of Strickland's two prongs.  Counsel's alleged failure to object to the particulars of the order was not a serious error nor was defendant deprived of a fair trial.

Opinion of Appellate Division at 8-11 (June 20, 2008).

23

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to _effective_ assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Strickland at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id. at 697.

24

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689.  As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  <u>Id.</u> at 690-91.  If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of <u>Strickland</u>.  <u>See</u> <u>Berryman v. Morton</u>, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

Here, the state courts correctly identified the controlling Supreme Court precedent.  They found no ineffective assistance; to the contrary, they found that counsel had committed no error in failing to object to introduction of the robbery indictment and that counsel had procured testimony favorable to Petitioner in his examination of the robbery-indictment witness, including the plea negotiation evidence that Petitioner objects to here. The state courts' determinations are neither contrary to nor an unreasonable application of <u>Strickland</u>.  Petitioner is not entitled to relief on this claim.

25

D.   <u>The Motion to Amend</u>

Petitioner seeks to amend the Petition to re-assert a previously withdrawn claim, now exhausted, that he was entitled to a new trial based on newly-discovered evidence, specifically, exculpatory testimony (as to the 1995 robbery of Price) provided during the 2001 trial in which he was acquitted of the 1995 robbery of Price.  Those three eyewitnesses to the robbery stated that Petitioner was not the perpetrator.  The testimony was provided on May 1, 2001, in the 1995 robbery trial.

This Court previously denied a Motion to stay these proceedings to permit exhaustion of this claim because Petitioner had failed to demonstrate good cause for the failure to exhaust the claims before bringing his federal habeas petition. Petitioner was acquitted of the 1995 robbery charges while his direct appeal of this murder conviction was pending.  This Court previously noted that:

> Certainly, at the time he filed his first state PCR petition, he knew of the allegedly exculpatory testimony and could have asserted a claim based on that testimony at that time.  Not only did he fail to assert that claim in his first PCR petition in 2003, he apparently did not assert that claim in a second state PCR petition until some time in 2008, after which it was denied as time-barred.  (Pet.'s Ltr., Attachment, CM/ECF No. 1.)  Petitioner then asserted the claim in a motion for a new trial in March of 2009.  Petitioner has provided this Court with no justification for his dilatoriness in presenting this claim to the state courts.

Opinion, Docket Entry No. 15 (July 19, 2010).

26

According to Petitioner's Motion and attachments, the state trial court denied the motion for new trial on April 7, 2009, the Appellate Division affirmed that decision on March 7, 2011, and the Supreme Court of New Jersey denied certification on July 12, 2011.

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course before being served with a responsive pleading. Where, as here, a responsive pleading has been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice requires." Fed.R.Civ.P. 15(a)(2). In accordance with the admonition that leave to amend should be freely given, the Supreme Court has instructed the lower courts as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

Foman v. Davis, 371 U.S. 178, 182 (1962).

As this Court has previously found, Petitioner had available to him information that would have permitted him to exhaust his state remedies with respect to this claim in a timely manner, prior to filing this habeas Petition.  In light of Petitioner's undue delay in exhausting this claim in state court, as well as his previous decision to withdraw this claim, it would not be appropriate to permit him to amend the Petition now, long after Respondents have answered.

In any event, Petitioner cannot establish entitlement to relief with respect to this claim.  The trial court denied relief because:

> The newly discovered evidence is not newly discoverable evidence as is required by the Second Prong of State v. Carter, 85 N.J. 300, 314, 426 A.2d 501 (1981) in that the evidence submitted to this Court is evidence that wasn't "discovered since the original trial and not discoverable by reasonable diligence prior thereto..." The witnesses that testified in the subsequent trial were discoverable prior to this trial, and thus this evidence does not fulfill the second prong of Carter ... .

(Motion [18] to amend, Att., Order denying motion for new trial (April 7, 2009).)  As noted above, the Appellate Division affirmed the denial of relief and the Supreme Court of New Jersey denied certification.

Petitioner asserts here that the trial court "abused its discretion" when it found that the testimony of witnesses in a 2001 trial was discoverable in 1999.  First, it appears that Petitioner is attempting to assert a state-law claim which does

28

not provide a grounds for federal habeas relief.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Second, to the extent the proposed new claim could be considered a claim that Petitioner was deprived of due process when the state court denied his motion for a new trial based on newly-discovered evidence, this Court agrees that Petitioner has failed to demonstrate that he could not have discovered these witnesses prior to the 1999 trial.  Moreover, as the state courts noted with respect to Petitioner's challenge to the prosecutor's testimony regarding the robbery indictment, discussed more fully above, the trial court carefully limited the jury's consideration of the testimony regarding the robbery indictment to evidence of motive and identification, only, based upon the victim's identification of Petitioner as the robber.  Thus, Petitioner's motive for murder rested not on his actual innocence or guilt of the earlier robbery, or on other witnesses' testimony regarding the earlier robbery, but on the possibility that the victim's identification of Petitioner as the robber might cause him to be convicted of that crime, regardless of his guilt or innocence.  All of this was made clear at the murder trial.  Thus, it is not likely that the testimony of these witnesses, that Petitioner was innocent of the earlier robbery, would have had a determinative effect on the murder trial.

29

It would be futile to permit this delayed amendment.  The Motion [18] to amend will be denied.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

## V.   CONCLUSION

For the reasons set forth above, the Petition, and the Motion to amend, will be denied.  An appropriate order follows.


                                   s/ Jose L. Linares
                                   Jose L. Linares
                                   United States District Judge

Dated: March 19, 2012

30